**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **EVOLUTION WELL SERVICES OPERATING, LLC, AND DYNAMIS POWER SOLUTIONS, LLC,** | § § § § | |
| *Plaintiffs,* | § § | Civil Action _____ |
| **V.** | § § § | |
| **ALLEN W. HILL** | § § § | |
| *Defendant* | § § | |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**

Plaintiffs Evolution Well Services Operating, LLC ("Evolution") and Dynamis Power Solutions, LLC ("Dynamis"; Evolution and Dynamis are, together, "Plaintiffs") file this Complaint for Injunctive Relief and Damages against Allen W. Hill ("Hill").

## I.    INTRODUCTION

This action is brought to halt an ongoing, unlawful scheme by a former employee who has exploited a position of trust and confidence for personal gain. In brazen violation of contractual obligations, statutory and common law duties and restrictions, and express policies that he acknowledged and agreed to as part of his employment, Defendant Hill engaged in a campaign to steal confidential and proprietary information of Plaintiff Evolution and its affiliate Plaintiff Dynamis that is entitled to trade secret protection for the apparent purpose of enhancing his career at his new employer, Turbine-X Energy, Inc. ("Turbine-X"), a direct competitor.

Defendant Hill started his employment with Evolution in 2018 and later moved to be employed by Evolution's affiliate Dynamis in 2022 when it evolved out of Evolution's operations. Hill resigned from Dynamis on December 19, 2025 and gave notice that his last day of employment was to be January 7, 2026. Defendant Hill left Dynamis after he had been recruited by Turbine-X

and a former Dynamis employee, Eduardo Felix da Silva ("da Silva"), in violation of da Silva's non-solicitation agreement.[1]

After receiving Hill's resignation notice, Dynamis became concerned about his departure and his potential theft of trade secrets. Through its counsel, Dynamis personally delivered to Hill on December 31, 2025, a letter that specifically reminded him, among other issues, that while a Dynamis employee he had access to Dynamis's confidential trade secret information and further instructed him to preserve, and not destroy, any documentation, which was broadly defined to include electronically stored information that he had in his possession. According to Hill, upon receipt of the Dynamis preservation letter, the first person he contact was not his then-current employer, Dynamis, but instead the president of his soon-to-be new employer, Turbine-X.

Evolution and Dynamis have uncovered objective evidence that Hill intentionally ignored his obligations and the requests concerning Evolution and Dynamis's confidential and trade secret information and his duties to preserve any documentation of Dynamis . Evolution and Dynamis learned that after Defendant Hill submitted his resignation notice but *while still employed by Dynamis and without its authorization*, Hill used the Dynamis computer he was entrusted with to access and copy to an external USB drive attached to the computer more than 1,100 electronic files containing Evolution and Dynamis's confidential trade secret and other confidential proprietary information.

Plaintiffs also discovered, and as confirmed by third-party forensic evidence, that on January 1, 2026 – only one day after he received the preservation letter – Defendant Hill, again

---

[1] Dynamis has also initiated a state court lawsuit against da Silva (also a former Dynamis employee) and Turbine-X, Dynamis's complicit competitor, for breach of, and tortious interference with, a contractual non-solicit agreement by recruiting Hill to leave Dynamis to go to work for Turbine-X. *See Dynamis Power Solutions, LLC v. Turbine-X Energy, Inc. and Eduardo Felix Da Silva;* Cause No. 2025-97109; In the District Court of Harris County, Texas, 152nd Judicial District.

without authorization and contrary to his acknowledged obligations, used the software on the computer he was provided to reset the computer in an apparent attempt to destroy all evidence of his misappropriation of Plaintiffs' information.

Plaintiffs also discovered that when Hill was reminded in early February 2026 of his obligation not to engage in spoliation, Hill deleted from the USB drive some, but not all, of the confidential trade secrets he had improperly taken and retained from his employment with Evolution and Dynamis. In short, Defendant Hill misappropriated Evolution and Dynamis's confidential trade secret information and then took affirmative, intentional actions to conceal his actions through acts of spoliation, and continues to have in his possession, custody, or control Plaintiffs' confidential information and trade secrets.

This suit is, regrettably, necessary to avoid immediate and irreparable harm to Evolution and Dynamis, pending an adjudication of the merits of this case and a hearing on Plaintiffs' application for preliminary and permanent injunctions.

## II.   PARTIES

1.   Plaintiff Evolution Well Services Operating LLC is a Delaware limited liability company with its principal place of business in Texas.

2.   Plaintiff Dynamis Power Solutions, LLC is a Delaware limited liability company with its principal place of business in Texas.

3.   Evolution and Dynamis are affiliates – sister companies.

4.   Defendant Allen W. Hill is an individual who may be served at his residence located at 201 Sundog Road, Huntsville, Texas 77340.

### III.    JURISDICTION AND VENUE

5.    The Court has subject matter jurisdiction over the case pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims against Defendant arise, in part, under the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836, *et seq.*, and raise questions of federal law.  Plaintiffs' remaining claims likewise fall within this Court's supplemental jurisdiction (28 U.S.C. § 1367) because they are so related to the federal claim that they form part of the same case or controversy.

6.    Defendant Hill is subject to the jurisdiction of this Court because he is a resident of Texas. Defendant Hill is subject to venue in this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

### IV.    FACTUAL ALLEGATIONS

7.    The facts stated below and in support of Plaintiffs' application and request for injunctive relief are established by the verifications of Matt Vohsholtz on behalf of Evolution and Aaron Gersich on behalf of Dynamis, which are attached as Exhibits 1 and 2, respectively.

#### A.  THE BUSINESS OF EVOLUTION AND DYNAMIS

8.    Plaintiff Evolution provides electric hydraulic fracturing services to oil and gas exploration and production companies in Texas and other states in which it is involved in interstate commerce through the use of mobile power generating units and other equipment. Evolution's mobile power generating units are composed of a turbine, a generator, housings for both the turbine and generator, and associated air intake and exhaust systems. Evolution's power generation units replace diesel generators and remove the use of diesel fuel from the hydraulic fracturing process. This system was developed after significant investment by Evolution into designs, technologies, asset construction, and operating processes.

9.    Evolution's mobile power generation equipment was so successful that Dynamis was created as its corporate affiliate to establish a stand-alone power generation company.

Dynamis focuses on delivering a full suite of mobile power generation services to customers in a variety of industries in Texas and other states in which it is involved in interstate commerce. Dynamis's services and operations include the assembly and construction of mobile power generation assets (generators and associated components), operations, maintenance, mobilization, and reporting. In addition to sales and leases of mobile power generation equipment to third parties, Dynamis performs repower and rework services and other maintenance on power generation equipment, including on Evolution's equipment.

10.     Dynamis' mobile power generation equipment is used across applications requiring emergency power or in cases where the power need is temporary. The mobile power plants Dynamis has developed are comprised of a turbine, a generator, and associated air intake and exhaust systems into unique packages so that the power generation units are hyper-mobile. The design, assembly, and construction of these hyper-mobile power plants is complex and the end result of substantial and continuing investment first by Evolution and then Dynamis over multiple years.

11.     In the ordinary course of their businesses, Evolution and Dynamis develop, use, and maintain a variety of confidential and proprietary information and trade secrets that derive independent economic value, actual or potential, from not being generally known, including, but not limited to, information about and relating to:

(a) the component parts of the mobile power systems, as evidenced in the designs, drawings, schematics, and notes on the designs and drawings;

(b) the selection, development, and refinement of materials through testing and analysis;

(c) the development and refinement of processes, and procedures necessary for construction, assembly, mobilization, and demobilizations of the mobile power units;

(d) the identification of proven service providers and suppliers of component parts;

(e)  analysis of equipment performance, successes, and failures;

(f)  the development and execution of maintenance requirements and procedures;

(g)  financial information about build costs;

(h)  research and development activities, technical data, computer files, and software;

(i)  operating methods, business processes and techniques, services, products, prices, costs, service performance, and operating results; and

(j)  formulae and processes used to calculate and negotiate prices to be charged customers

(collectively, "Confidential Information").

12.    In addition, Evolution and Dynamis expended substantial time, effort, resources, and money into developing their customer relationships and goodwill, all of which employees, including Hill when he was employed, benefitted from substantially.

13.    This Confidential Information is proprietary to Evolution and Dynamis and is not readily available to competitors or to the general public. Employees like Defendant Hill can only access the Confidential Information by possessing electronic access credentials that Evolution and Dynamis provide solely for use in their roles as an employee of Plaintiffs servicing their internal and external customers. Furthermore, Evolution and Dynamis provide or continue to provide this access to employees after they acknowledge receipt of and compliance with written policies that prevent the unauthorized disclosure of Confidential Information. Individuals lacking appropriate electronic access credentials cannot access the companies' databases and the Confidential Information.

14.    Further, Evolution and Dynamis also have corporate policies applicable to their employees that are intended and designed to protect Confidential Information. In short, employees have no authorization – or legitimate reason — to use the Confidential Information for any purpose outside their employment.

6

B.  **DEFENDANT HILL'S EMPLOYMENT WITH EVOLUTION AND DYNAMIS**

15.    Evolution hired Hill in July 2018 as a field supervisor to work on mobile gas turbine power units that embody unique confidential designs and configurations. Among other job responsibilities, Hill developed procedures for rig up and rig down procedures for the equipment, pre-start operations requirements, tooling kits, training programs for field operations, including the critical alignment of the component parts and borescope analysis of the turbines. Evolution considers the materials and documents Hill developed to be Confidential Information.

16.    Defendant Hill became a Dynamis employee in 2022 and transitioned from a field supervisor to a manufacturing manager. His responsibilities included rework and repower of existing mobile power units (including Evolution's), collaboration of the redesign of the air handler component of a mobile power unit, risk mitigation, and the development of technical publications based on research and design efforts that identified and addressed mobile power package issues and defined corrective actions for the units designed, built, or used by Evolution or Dynamis.

17.    In connection with the performance of his work, Evolution and Dynamis provided Hill with Confidential Information and other detailed confidential trade secret information, including about the mobile power units, the component parts of the units, and how the units are assembled and operated. Hill, as an Evolution and then a Dynamis employee, developed further Confidential Information and trade secret information in the performance of his job responsibilities. Plaintiffs Evolution and Dynamis invested time and money in Defendant Hill for him to effectively do his jobs. Hill was paid a competitive salary and received generous benefits that included health insurance.

7

18.    Defendant Hill had access to Evolution and Dynamis's computer systems and the Confidential Information contained therein, and he regularly utilized that access. As noted above, Evolution and Dynamis required Hill to have approved permissions to access confidential information saved and located on the computer servers and folders. Indeed, the work that Hill performed at Dynamis on Evolution equipment required him to access, review, and create significant confidential information of both Evolution and Dynamis. Dynamis now has evidence that Defendant Hill improperly copied Evolution and Dynamis Confidential Information and retained it in his possession after his employment.

### C. HILL'S CONFIDENTIALITY AGREEMENT WITH EVOLUTION

19.    When Evolution employed Hill, he executed a Non-Compete, Confidentiality, & Non-Solicit Agreement with Evolution with an effective date of July 2, 2018 (the "Confidentiality Agreement"). Exhibit 3 is a true and correct copy of the Confidentiality Agreement.

20.    The Confidentiality Agreement has a detailed definition of "Confidential Information" and Hill agreed that in his position he would have access to and learn about Evolution's Confidential Information. He also agreed and acknowledged that Evolution had invested and continues to invest substantial time and money to develop and create Confidential Information that give Evolution a competitive advantage over others in the marketplace, and that Evolution would suffer irreparable harm if Confidential Information is disclosed to its competitors.

21.    Hill further agreed in the Confidentiality Agreement that he would:

(i)    treat all "Confidential Information" as strictly confidential;

(ii)    not directly or indirectly disclose Confidential Information to anyone outside the direct employ of Evolution except as required in the performance of Hill's authorized employment duties; and

8

(iii)     not access or use any Confidential Information and not copy any documents containing any Confidential Information or remove any Confidential Information from the premises or control of Evolution except as required in the performance of his duties.

Confidentiality Agreement, Section 1(c), p. 2-3.

22.     The Confidentiality Agreement provides that Hill's confidentiality obligations and use restrictions commenced upon his first receipt of Confidential Information, which was shortly after his start date, and continued until that information becomes public knowledge other than as a result of Hill's breach of the agreement. *Id.* Because that information has not become publicly available, Hill's non-disclosure and other obligations under the Confidentiality Agreement continue to be in full force and effect. Hill also agreed to provide any subsequent employer a copy of the Confidentiality Agreement. Confidentiality Agreement, Section 20, p. 10.

**D.  DEFENDANT HILL'S OBLIGATIONS UNDER DYNAMIS'S EMPLOYEE HANDBOOK**

23.     Evolution and Dynamis's corporate affiliate parent is Beusa Energy LLC ("Beusa"). As part of the efforts to protect and maintain Evolution and Dynamis's Confidential Information and trade secrets, Beusa prepared a detailed Employee Handbook for all employees of Beusa and its affiliated companies, including Evolution and Dynamis. The Employee Handbook reiterates the expectations and standards for all employees. Defendant Hill was required to log into the human resources portal, and review and acknowledge the Employee Handbook, which Hill did when he was a Dynamis employee on February 5, 2024, as evidenced by his digital signature that includes a reference to his unique identifying employee number. Exhibit 4 to this Complaint is a true and correct copy of the Employee Handbook and Hill's acknowledgments of the handbook.

24.     Notably, Defendant Hill acknowledged in the Employee Handbook that as an employee, he was subject to Dynamis's policies that prohibit the improper distribution and retention of Dynamis's confidential business information. The handbook further provides a

detailed description of the types of information the company considers Confidential Information, which includes technical data, designs, plans, drawings, research and development data, project reports, and other information.

25.     In full, it states:

**Confidentiality**

Employees agree that they are subject to the Company's policies prohibiting the nonbusiness use or dissemination of the Company's confidential business information. Employees will take all appropriate steps to safeguard the Company's confidential business information, including segregating it from personal papers and documents, not allowing nonemployees to access such information, and keeping such information in locked drawers or file cabinets when not in use. Employees will maintain confidential information, including, but not limited to, information regarding the Company's products or services, processing, marketing and sales, client lists, client e-mail addresses and mailing addresses, client data, orders, memoranda, notes, records, technical data, sketches, designs, plans, drawings, trade secrets, research and development data, experimental work, proposals, new product and/or service developments, project reports, sources of supply and material, operating and cost data, and corporate financial information.

Employee Handbook, p. 16.

26.     Defendant Hill also specifically acknowledged the Code of Ethics/Confidentiality obligations in the Employee Handbook that prohibit Hill from using the company's Confidential

Information for personal gain. Hill also acknowledged, consistent with the law, that he must place the interests of the Company ahead of his private interests:

## 3.8 - CODE OF ETHICS/CONFIDENTIALITY

Employees are expected to act in a responsible and respectable manner at all times as it is a direct reflection on the Company's reputation. Additionally, employees are to remain free of influences that may result in the loss of objectivity regarding business conducted with Company customers, vendors or with the Company itself. You are required to disclose and avoid any interests or activities involving another organization or individual that may result in a conflict of interest for the Company.

### Purpose

Excessive activities and gratuities and access to information may lead to conflicts of interest for employees, managers, and principal shareholders. The Company has developed this policy to recognize such positions and to prevent a loss of objectivity by requiring appropriate and trustworthy conduct of all employees, managers and principal shareholders.

### Policy

Employees assume a duty to the Company, its customers, and its shareholders, to act in all matters in a manner that will merit public trust and confidence. An employee may not use his/her position, influence, confidential information, or company assets for personal gain. This duty extends to all activities, both personal and professional. Each employee of the Company is expected to direct his/her personal conduct in a manner which will bring credit to the organization and to avoid any action which would discredit the Company.

In the exercise of privileges and authority arising from Company employment, two fundamental principles apply: a Company employee will place the interests of the Company ahead of his/her own private interest; and a Company employee has a duty to make full disclosure of any situation in which his/her private interests create a conflict or potential conflict with those of the Company.

Employee Handbook, Section 3.8 Code of Ethics/Confidentiality, p. 24.

27.    Defendant Hill also agreed in the Employee Handbook to policies that are intended to ensure the protection of Confidential Information while allowing Hill flexibility to use storage devices in connection with his work. The handbook makes clear that by using a personal storage device, Hill gave permission to the Company to inspect the device and analyze any files or data on the device and that Hill waived any right to privacy as to anything he created or stored on the company's systems or computers.

Employees should not bring personal computers to the workplace or connect them to Company electronic systems unless expressly permitted to do so by the Company. Any employee bringing a personal computing device or personal imaging device onto Company premises thereby gives permission to the Company to inspect the device at any time with personnel of the Company's choosing and to analyze any files, other data or data storage media that may be within, connectable to, or accessible by the device in question. Employees who do not wish such inspections to be done on their personal computers or imaging devices should not bring such items on Company premises.

******

11

> on the Company's computers. Employees waive any right to privacy in anything they create, store, send, or receive on the Company's computers or the Company-provided Internet.

Employee Handbook, Section 6.2 Communication Systems, Image Recording Devices, Computer Use, Software and Email Policy, p. 47.

28. Defendant Hill further agreed in the Employee Handbook that his use of any personal computer the company provided to him was limited only to conduct company business, and that he could use the software provided by the company only for authorized business purposes. The handbook restates that Hill waived any right to privacy as to anything he creates or stores on the company's systems or computers.

> **Computer Software.** It is the policy of the Company to provide employees with personal computers (PC's), or access to them, in order for employees to conduct business. All necessary computer software is provided by the Company and may be used only for authorized business purposes. The Company has the right, but not the duty, to monitor any and all aspects of its computer system, including but not limited to, monitoring sites employees visit on the Internet, monitoring chat groups and news groups, reviewing material downloaded or uploaded by employees, and reviewing e-mail sent and received on the Company's computers. Employees waive any right to privacy in anything they create, store, send or receive on the Company's computers or the Company-provided Internet.

Employee Handbook, Section 6.2 Communication Systems, Image Recording Devices, Computer Use, Software and Email Policy, p. 49.

29. The Employee Handbook has several provisions that are aspects of the comprehensive efforts by Evolution and Dynamis to protect their Confidential Information. In addition to the above provisions, the Employee Handbooks makes clear that the company could conduct a search of Hill's office, briefcase, backpack, etc. to search for personal electronic devices, the improper use of which may be violations of the company's policies. *See* Employee Handbook, Searches, p. 51.

30. Defendant Hill also explicitly acknowledged in the Employee Handbook that if he left his employment at Dynamis, he is required to return and not retain any copies of company-related documents, materials, information, drawings, specifications, other writings that reflect the

12

company's business, "and so on" regardless of where the items are kept or how they are prepared. Hill also acknowledged that if he failed to return company property if he departed, he would be considered to have left Dynamis's employ on unsatisfactory terms and that he was subject to legal actions for recovery of the loss.

> At the end of your employment, all Company property issued to you must be returned to the Company. This includes all electronic and computer equipment, security badge, any phone or credit cards, and all Company-related documents, materials or information. You must return, retaining no copies, any and all correspondence, documents, drawings, specifications, computer printouts and other writings which relate to or reflect the Company business, operations, supplier information, and so on, regardless of where these things were kept or how they were prepared. Should any Company property assigned to you be lost, damaged or stolen, you may be responsible for the replacement value of the property. The value of any property issued to you and not returned may be deducted from your paycheck and/or from any amounts due to you. As a condition of employment, a written authorization form will be completed authorizing this deduction.

Employee Handbook, Section 5.6 Separation from Employment, p. 45.

31.    Finally, Hill agreed in his acknowledgement of the Employee Handbook that he could not share or divulge company trade secrets of confidential or proprietary information during or after his employment, and that he was aware of his continuing confidentiality obligations under the Evolution Confidentiality Agreement.

> At time of termination, any sick leave or vacation used but not yet accrued will be deducted from the final pay. As a condition of employment, a written authorization form will be completed authorizing this deduction. After your employment, you will continue to be bound by the terms of the Confidentiality Agreement you signed at the beginning of your employment, and you may not share or divulge any Company trade secrets or confidential or proprietary information on an unauthorized basis at any time during or after your employment relationship with the Company.

Employee Handbook, Section 5.6 Separation from Employment, p. 45.

### E. DEFENDANT HILL'S RESIGNATION FROM DYNAMIS AND IMPROPER COPYING AND RETENTION OF EVOLUTION AND DYNAMIS CONFIDENTIAL AND TRADE SECRET INFORMATION

32.    Defendant Hill resigned his position at Dynamis on Friday, December 19, 2025. His last day of work at Dynamis was intended to be January 7, 2026. Hill informed his supervisor that he was going to work for Turbine-X, a competitor of Dynamis that is developing mobile turbine power units similar to those manufactured by Dynamis and used by Evolution.

33.     Starting on Monday, December 22, 2025, Hill put into action his scheme to improperly copy and take with him to his new employer Turbine-X a significant amount of Evolution and Dynamis confidential trade secret information. Although Dynamis terminated Hill's access to the Dynamis servers and cloud folders on December 22, 2025, Hill had a substantial amount of Evolution and Dynamis information saved locally on the Dynamis computer he was entrusted to use for business purposes. Dynamis has discovered that Hill had created and saved Confidential Information on the Dynamis computer in an elaborate and well-organized file system.

34.     For example, Hill had created on the desktop of the Dynamis computer folders for his personal information that were separate from the expansive Evolution and Dynamis information and documents he organized and saved into multiple folders and sub- and sub-sub folders. He had approximately 9 gigabytes of Evolution and Dynamis data saved locally on the computer (which was not necessary because that data was available on secure cloud servers), comprised of 8,300 files that he had organized into 765 folders.

35.     On December 22, Hill created a folder on the USB drive called "Transfer" and in the days thereafter proceeded to transfer to the USB drive extensive Evolution and Dynamis confidential trade secret proprietary information from the Dynamis computer. Notably, Hill did not copy everything, however, but instead cherry-picked the data that would be most helpful to him at his new job with Turbine-X.

36.     In total, Hill copied approximately 1,100 files of various types of Confidential Information. Evolution and Dynamis had not authorized Hill to either (i) copy this information to his external USB drive after his resignation or (ii) retain any of the information after he left his employment with Dynamis. Indeed, Hill's actions were directly contrary to his obligations under

the Evolution Confidentiality Agreement and the Employee Handbook that he acknowledged and agreed to while a Dynamis employee.

37.    As noted above, because of the circumstances of his departure from Dynamis, Dynamis became concerned about Defendant Hill's departure and, through its counsel, personally delivered to Hill on December 31, 2025, a letter that specifically reminded him, among other issues, that while a Dynamis employee he had access to Dynamis's confidential trade secret information and further instructed him to preserve any documentation, which was broadly defined to include electronically stored information that he had in his possession.

38.    Hill promptly ignored Dynamis's preservation letter and continued his scheme to take confidential information. The next day, on January 1, 2026, Hill used the Dynamis computer to again access the Evolution and Dynamis information saved locally on the computer. He also accessed the USB drive to recycle, but not delete, some – but not all – of the confidential information he had copied onto the USB drive. In other words, Hill did exactly what the December 31, 2025 letter instructed him not to do. Hill, moreover, was still and employee of Dynamis on January 1.

39.    Then, as shown by irrefutable computer forensic evidence, at approximately 2:24 p.m. on January 1, 2026, Hill caused a reset of the Dynamis computer.[2] This reset of the computer was an apparent attempt by Hill to cover his tracks through a reinstallation of the Windows operating system, which can have the effect of wiping out, as in permanently deleting, information

---

[2] These facts concerning the Dynamis computer entrusted to Hill and the partial and time-limited file and data listing from one of Hill's external USB drives are established by the verification of Terry Landry, Manager of Digital Forensics Laboratory for Crowe LLP in The Woodlands, Texas, attached as Exhibit 5.

15

and data on the computer, including how the computer had been used.[3] Hill left the computer on the desk of his supervisor, who found it when he returned to the office on January 6, 2026.

40.    Hill's apparent efforts to use the computer reset to cover up his theft was only partially successful. Critical logs about the Windows system usage were partially destroyed (as in deleted and then written over), including the Windows system logs that show when USB external drives are attached. At significant cost and using third-party computer forensic experts, however, Plaintiffs recovered data from the computer that shows what Defendant Hill was accessing after he submitted his resignation notice.

41.    In an effort to spin the events, Hill has admitted that when he left Dynamis he took "generic technical documents" that he created while at Dynamis. His unconvincing characterization fell apart when, with Hill's agreement, a third-party forensic expert made a file, folder, and data listing of the USB external drive that Hill used on the Dynamis computer. The file listing Dynamis received is limited by date – files created or modified after July 2018 and created prior to January 1, 2026 – and thus does not provide information about Hill's access and use of the drive after January 1, 2026, which is a critical issue and one of the subjects of the requested injunctive relief. As discussed herein, the file and data listing confirms that Defendant Hill copied Evolution and Dynamis's confidential information and trade secrets without authorization.

42.    Although Hill had told Dynamis that he would come back to Dynamis on or about January 5th to transition some projects to employees who were taking over his work, Hill never showed up and apparently went to work at Turbine-X on January 2, while still employed by Dynamis. Through the file, folder, and data listing of the USB drive, Plaintiffs have learned that

---

[3] Hill testified in the state court lawsuit that he did not reset the computer. The objective facts available from the computer and the timeline of the reset on January 1, 2026, however, demonstrate that the computer was in fact reset and Hill was the only person who had the computer on that date. The reset did not occur by itself.

later in January (while working for Turbine-X), Hill accessed certain of the Evolution and Dynamis confidential information he had taken on the USB drive.

43. On February 3 and 4, Dynamis's counsel sent emails and a letter to counsel for Turbine-X and Hill that specifically requested their need to produce any external USB drive that Hill used on Dynamis's computer and that no one, including Hill, should access the drives until they were imaged by a forensic computer expert, which would preserve any data and metadata and was in the interest of all parties. Counsel for Hill and Turbine-X responded that Hill "did make copies of personal information that was contained on his hard drive at Dynamis." As shown by the folder, file, and data listing of the USB drive, Hill took much, much more than his personal information via the USB external drive, including Plaintiffs' confidential information.

44. Apparently alarmed by Dynamis's reasoned preservation requests, Hill again accessed the USB on February 4 and permanently deleted (by recycling and then emptying the recycle bin) some, but not all, of Plaintiffs' confidential information on the USB drive. In an apparent effort to enhance his position and benefit Turbine-X, Hill intentionally retained on the USB drive some of Plaintiffs' confidential information. Further, the drive still contains the confidential information that he previously only recycled (but did not delete). These actions on February 4, like Hill's actions on December 31 and January 1, taken after explicit and unequivocal notice to Hill, Turbine-X, and their counsel are textbook intentional spoliation and give rise to other claims as alleged below as well as other potential evidentiary and pleading remedies.

F. **EVOLUTION AND DYNAMIS'S REVIEW OF THE FILE LISTING FROM THE USB DRIVE CONFIRMS HILL'S IMPROPER COPYING AND RETENTION OF PLAINTIFFS' CONFIDENTIAL INFORMATION**

45. Employees of Evolution and Dynamis with knowledge of their Confidential Information and with Hill's work, including his use and creation of Plaintiffs' Confidential

17

Information, all of which is considered trade secrets, reviewed the partial date-limited file, folder, and data listing Dynamis received of one of Hill's external USB drives. Based on the file name and the folder structure, and their knowledge of the businesses of Evolution and Dynamis, they observed that the file listing included the following categories or types of Plaintiffs' Confidential Information:

- Proprietary diagrams of specialized equipment and instructions for installation of parts

- Gas turbine to generator alignment procedures for Dynamis equipment

- Turbine build guides

- Designs, drawings, and rendering of components of mobile turbine power systems

- Pictures and commentary about equipment that shows proprietary design and techniques

- Checklists and other instructions for maintenance on component parts

- Borescope inspections of turbine engines, including engines used on Evolution assets

- Punch lists for construction or assembly of equipment

- Testing and analysis of equipment performance and failures, including innovative testing methodologies and applications

- Rig up and rig down, rig down and rig up, and other packaging procedures

- Innovative solutions to field operations challenges

- Improvements to equipment, component, and processes

- Product standardization analysis for turbines and generators

- Vendors for component parts, assembly analysis, and with knowledge of customer confidential site locations

- Bills of Material and parts information that show the parts of the mobile power units, including part number and vendor information

18

- Dimensions of components of equipment

- Vendors and vendor pricing for components proprietary to Plaintiffs' units

46.     Plaintiffs anticipate that through a review of the full file listing of the documents on Hill's external USB drive and further, the ability to review the documents themselves, they would confirm the above and identify additional types or categories of their Confidential Information.

47.     While Hill's improper possession of Plaintiffs' Confidential Information on his external USB drive is actionable in itself, what is alarming to Plaintiffs is that the file listing Dynamis received indicates that Hill has accessed the drive and the files on the drive using at least one other computer. The obvious risk is that Hill continues to access and use Plaintiffs' Confidential Information, and he has further copied the information to other devices or computers.

## V.      CAUSES OF ACTION

**A.      COUNT I - VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *ET SEQ.***

48.     Plaintiffs reallege and incorporates by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

49.     Plaintiff Evolution and Dynamis's Confidential Information described above and throughout constitutes "financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes." The Confidential Information constitutes Plaintiffs' "Trade Secrets" as defined in the Defend Trade Secrets Act. *See* 18 U.S.C. § 1839(3).

50.     For the purposes of Plaintiffs' claims herein, Plaintiffs' trade secrets-at-issue shall be referred to as "Confidential Information and Trade Secrets."

19

51.     Plaintiffs Evolution and Dynamis, both of which engage in interstate commerce, own the Confidential Information and Trade Secrets; they are the entities in which the rightful legal and equitable titles to and rights in the Confidential Information and Trade Secrets are reposed. Plaintiffs' Confidential Information and Trade Secrets are not readily ascertainable, through proper means, by an individual such as Defendant Hill or entity such as Turbine-X.

52.     To protect their Confidential Information and Trade Secrets, Plaintiffs utilize password protected systems and other electronic security measures that restrict access from unauthorized individuals. To further protect Confidential Information and Trade Secrets, Plaintiff Evolution required Hill and other employees to execute agreements containing confidentiality and non-disclosure provisions to work for Plaintiff. The Confidentiality Agreement between Evolution and Hill attached as Exhibit 3 is an example. Further, Dynamis required Hill to acknowledge his agreement and adherence to the Employe Handbook attached as Exhibit 4 that contains express provisions that protect, and are intended to prevent the disclosure of, Confidential Information and Trade Secrets.

53.     Plaintiffs also protect their Confidential Information and Trade Secrets through the use of electronic account security measures such as unique user identification and passwords. An Evolution or Dynamis employee such as Hill, for example, would be required to input a unique user ID and password to access electronic systems housing Plaintiffs' Confidential Information and Trade Secrets. Plaintiffs therefore took reasonable measures to preserve the confidentiality of the Confidential Information and Trade Secrets that were disclosed or otherwise made available to Hill in his capacity as an employee of Evolution and Dynamis. *See* 18 U.S.C. § 1839(3).

54.     Defendant Hill had access to Plaintiffs' Confidential Information and Trade Secrets. For example, while an employee, Hill had copied that information onto the hard drive of

the Dynamis computer provided to Hill for business use. Hill also had access through his Dynamis password to Dynamis's data servers that contained Confidential Information and Trade Secrets. Plaintiffs permitted Hill to have access to its Confidential Information and Trade Secrets for the limited and exclusive purpose of performing his job responsibilities in his capacity as an employee of Evolution and Dynamis. Plaintiffs' Confidential Information and Trade Secrets were not and are not publicly known or accessible.

55.     Plaintiffs' Confidential Information and Trade Secrets derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the Confidential Information and Trade Secrets.

56.     Defendant Hill derived economic value from the improper acquisition, apparent disclosure, and/or use of Plaintiffs' Confidential Information and Trade Secrets as a Turbine-X employee to obtain a commercial advantage and to compete with Dynamis by presumably using the information to benefit his new employer, Turbine-X. Moreover, upon information and belief, Hill accessed Plaintiff's Confidential Information and Trade Secrets while working as a Turbine-X employee. On information and belief, Defendant has accessed Plaintiffs' Confidential Information and Trade Secrets while a Turbine-X employee to develop competing mobile power generation products or services, thereby avoid costs, expenses, and other associated effort required to develop the products or services. In addition, upon information and belief, Hill still possesses, has access to, and is using Plaintiffs' Confidential Information and Trade Secrets to benefit himself, and he will continue to do so if not stopped.

57.     Defendant Hill owed and still owes Plaintiffs a duty to maintain the secrecy of the Confidential Information and Trade Secrets and to limit its disclosure. Hill acquired knowledge of

21

the Confidential Information and Trade Secrets in his capacity as an employee of Plaintiffs. Further, Hill acquired, disclosed, and used the Confidential Information and Trade Secrets by and through improper means by, without limitation, downloading Plaintiffs' Confidential Information and Trade Secrets for unauthorized use in a manner inconsistent with Plaintiffs' rights therein and express prohibitions against such conduct. Hill knew from the Evolution Confidentiality Agreement and the Employee Handbook that he was required to maintain the confidentiality of the information and not disclose it or take it if his employment terminated and, further, that his acquisition and retention of the information by downloading it onto an external USB drive was unauthorized, improper, and inconsistent with Plaintiffs' rights and Hill's obligations.

58.     In addition, upon information and belief, Hill accessed the Confidential Information and Trade Secrets as a Turbine-X employee, and thereby disclosed it to a third party without Plaintiffs' express or implied consent, and Hill used improper means to acquire the Confidential Information and Trade Secrets for the purpose of advancing his own self-interests, including developing products and services at Turbine-X in competition with Plaintiffs. Hill therefore "misappropriated" Plaintiffs' Confidential Information and Trade Secrets as defined in 18 U.S.C. Section 1839(5)(A) and/or (B).

59.     Defendant Hill's misappropriation of the Confidential Information and Trade Secrets caused Plaintiffs to suffer actual losses, including the expenses Plaintiffs have incurred to investigate Hill's misappropriation and take remedial actions. Further, on information and belief, Hill disclosed or used the Confidential Information and Trade Secrets to benefit himself and Turbine-X, a competitor business who, upon information and belief, is presently misappropriating same. Hill's conduct caused—and continues to cause—Plaintiffs to be subject to unfair competition in the marketplace and allowed Hill and Turbine-X to obtain an unfair advantage in

competing with Plaintiffs. Plaintiffs seeks compensation for its damages in the amount of all such actual losses. *See* 18 U.S.C. § 1836(b)(3)(B)(i)(I).

60.     Plaintiffs also seek damages for unjust enrichment caused by Defendant Hill's misappropriation for amounts that are not addressed in computing the damages for actual losses. The Confidential Information and Trade Secrets that Hill continues to possess were the product of substantial investments by Plaintiffs and Hill is unjustly enriched by his misappropriation of that information. Plaintiffs are entitled to alternative or additional damages measured by the imposition of liability for a reasonable royalty for Hill's unauthorized disclosure or use of the Confidential Information and Trade Secrets. *See* 18 U.S.C. § 1836(b)(3)(B)(i)(II), (ii).

61.     Defendant Hill also willfully and maliciously misappropriated the Confidential Information and Trade Secrets. Plaintiffs therefore seek an award of exemplary damages in an amount of two times the amount of damages awarded as described in the foregoing paragraph, together with reasonable attorney's fees. See 18 U.S.C. § 1836(b)(3)(C) and (D).

62.     Plaintiffs also seek an injunction to prevent any actual or threatened misappropriation, on such terms as the Court deems reasonable, requiring affirmative actions to be taken to protect the Confidential Information and Trade Secrets. *See* 18 U.S.C. § 1836(b)(3)(A)(i), (ii), (iii).

B.     COUNT II - VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT

63.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

64.     Defendant Hill's misappropriation of Plaintiffs' Confidential Information and Trade Secrets as described in Count I also violates the Texas Uniform Trade Secrets Act ("TUTSA").

23

65.    As set forth above, Plaintiffs' Confidential Information and Trade Secrets that were taken and used by Defendant Hill constitute trade secrets under Texas law.

66.    As set forth above, Plaintiffs' Confidential Information and Trade Secrets have been compiled and/or developed by Plaintiffs over many years and at great expense. This information is kept confidential and safeguarded by Plaintiffs and is not readily ascertainable and/or cannot be obtained readily and by proper means by third parties from outside sources. Plaintiffs' Confidential Information and Trade Secrets are extremely valuable to Plaintiffs and provide them with a competitive advantage in the marketplace.

67.    As set forth above, Plaintiffs provided their Confidential Information and Trade Secrets to Defendant Hill under the protections of Texas law, the Evolution Confidentiality Agreement, and the Employee Handbook that Hill expressly acknowledge and agreed to comply with. Hill was prohibited from using or disclosing any of Plaintiffs' Confidential Information and Trade Secrets for any purpose inconsistent with the Confidentiality Agreement or Employee Handbook, and Hill's role and duties as an employee of Evolution and later Dynamis. Hill therefore owed, and continues to owe, Evolution and Dynamis duties to maintain the secrecy of such information. Hill improperly utilized Plaintiffs' Confidential Information and Trade Secrets harming Plaintiffs in the process.

68.    For these reasons, Defendant Hill has violated and continues to violate the Texas Uniform Trade Secrets Act, Tex. Civ. Prac. & Rem. Code Section 134(A).001, *et seq*. Hill's prior, current, and continued/threatened unlawful misappropriation of Plaintiffs' Confidential Information and Trade Secrets is wrongful, and the utilization of such information entitles Plaintiffs to recover both monetary damages and injunctive relief.

69.     Defendant Hill's willful, malicious, and unlawful misappropriation and apparent disclosure and use of Plaintiffs' Confidential Information and Trade Secrets has directly and proximately caused, and continues to directly and proximately cause, substantial and irreparable harm to Plaintiffs for which there is no adequate remedy at law. Hill has further been unjustly enriched as a result of his wrongful conduct.

70.     Plaintiffs have and/or will be damaged by Defendant Hill's misappropriation of their Confidential Information and Trade Secrets and have suffered actual, incidental, and consequential damages and injury that cannot be measured by any certain pecuniary standard. Because Hill's misappropriation of Plaintiffs' Confidential Information and Trade Secrets is and was willful and malicious, Plaintiffs are also entitled to exemplary damages in addition to all actual damages and equitable relief. Plaintiffs are further entitled to recover its reasonable and necessary attorneys' fees. *See* Tex. Civ. Prac. & Rem. Code § 134A.005. Plaintiffs are also entitled to and seek to recover pre-and-post judgment interest and court costs from Hill.

## C.     COUNT III - VIOLATION OF COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030, *ET SEQ.*

71.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

72.     The Dynamis computer that Hill was provided for use in his performance of his job responsibilities is a protected computer under the Computer Fraud and Abuse Act because it was used in or affecting interstate commerce. *See* Computer Fraud and Abuse Act, 18 U.S.C. § 1030(e)(2). Hill lacked authority to access the Dynamis computer or exceeded any granted authority to access the Dynamis computer and the Evolution and Dynamis Confidential Information and Trade Secrets that was stored locally on the hard drive of the computer without Plaintiffs' effective consent.

73.     Indeed, Hill's right to access Plaintiffs' Confidential Information and Trade Secrets, whether located on Plaintiffs' servers or the Dynamis computer in Hill's possession at that time, was effectively terminated upon his resignation and intended cessation of his employment by Dynamis. After his resignation, Hill was never granted any right to access Plaintiffs' Confidential Information and Trade Secrets for his personal benefit or the benefit of his next employer, Turbine-X.

74.     Hill nonetheless (i) improperly accessed the Dynamis computer and copied certain of Plaintiffs' Confidential Information and Trade Secrets to an external USB drive for the sole purpose of stealing or misappropriating Plaintiffs' Confidential Information and Trade Secrets and (ii) on information and belief, reset the computer in a way that caused damage by the deletion of information on the computer. Hill caused or will cause a loss of more than $5,000 to Plaintiffs during a one-year span.

75.     Plaintiffs have suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Hill's violations of the Computer Fraud and Abuse Act as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court.

**D.      COUNT IV - VIOLATION OF HARMFUL ACCESS BY COMPUTER ACT ("HACA") TEX. CIV. PRAC. & REM. CODE § 143.001 *ET. SEQ.***

76.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

77.     Without Dynamis's effective consent, Defendant Hill knowingly and intentionally accessed the Dynamis computer and transferred Plaintiffs' Confidential Information and Trade Secrets from the computer to a USB drive for the purpose of taking the information with him to his new employer, Turbine-X (a competitor) and, on information and belief, sought to reset the computer. Hill lacked authority to access the Dynamis computer in that manner or exceeded any

26

granted authority to access the Dynamis computer and the Evolution and Dynamis Confidential Information and Trade Secrets that was stored locally on the hard drive of the computer without Plaintiffs' effective consent. Hill also lacked authority to use the computer's software to, on information and belief, cause a reset of the computer.

78.    Indeed, Defendant Hill's right to access Plaintiffs' Confidential Information and Trade Secrets, whether located on Plaintiffs' servers or the Dynamis computer in Hill's possession at that time, was effectively terminated upon his resignation and intended cessation of his employment by Dynamis. After his resignation, Hill was never granted any right to access Plaintiffs' Confidential Information and Trade Secrets for his personal benefit or the benefit of his next employer, Turbine-X.

79.    On information and belief, Hill's actions violate Section 33.02 of the Texas Penal Code, which constitutes a violation of the Texas Harmful Access by Computer Act. The Texas Harmful Access by Computer Act creates a civil cause of action under Section 143.001 of the Texas Civil Practice and Remedies Code.

80.    Plaintiffs have suffered and will continue to suffer imminent and irreparable injury, loss, or damage as a result of Hill's violations of the Texas Harmful Access by Computer Act as well as past and future monetary damages in excess of the minimum jurisdictional limits of the Court. Further, under Texas Civil Practice and Remedies Code Section 143.002, a party establishing a cause of action for violation of the Texas Harmful Access by Computer Act is entitled to reasonable attorneys' fees and costs. Thus, Plaintiffs also seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

E.    **COUNT V - BREACH OF EVOLUTION CONFIDENTIALITY AGREEMENT**

81.    Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

27

82.     The conduct and actions of Hill, as described herein, were and are a violation of his contractual duties and obligations to Plaintiff Evolution under the Evolution Confidentiality Agreement.

83.     Plaintiff Evolution seeks all available legal and equitable relief available including a temporary restraining order, and temporary and permanent injunctive relief and damages proved at trial.

**F.     COUNT VI – BREACH OF FIDUCIARY DUTY**

84.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

85.     The conduct and actions of Hill, as described herein, were and are a violation of the fiduciary duties he owes to Evolution as a former employee, Dynamis as an employee at the time of certain of his actions, and as a former employee of Dynamis, for which Plaintiffs seek all damages legally available for such breach of fiduciary duty.

86.     Moreover, because the conduct was engaged in intentionally and with wanton disregard for its rights and interests, Plaintiffs seeks an award of exemplary damages.

87.     Also, Plaintiffs seek all equitable relief available to it, as well as a temporary restraining order, and temporary and permanent injunctive relief.

**VI.     APPLICATION FOR TEMPORARY RESTRAINING ORDER
AND TEMPORARY AND PERMANENT INJUNCTION**

88.     Plaintiffs reallege and incorporate by reference the preceding paragraphs of this Original Complaint as if fully set forth herein.

89.     Plaintiffs' Complaint for Injunctive Relief and Damages is authorized by, without limitation, Federal Rule of Civil Procedure 65, DTSA, 18 U.S.C. § 1836(b)(3)(A)(i), (ii), (iii);

TUTSA, Tex. Civ. Prac. & Rem. Code Ann. § 134(A).001, *et seq*; Chapter 65 of the Texas Civil Practice & Remedies Code; and CFAA, 18 U.S.C. § 1030(g).

90.    To obtain injunctive relief, a plaintiff must show (1) a substantial likelihood of success on the merits, (2) a substantial threat that they will suffer irreparable injury if the injunction is not granted (3) that the threatened injury outweighs any damage that the injunction might cause the defendant, and (4) that the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008). "When the plaintiff has brought multiple causes of action, [they] need only present a prima facie case on one of them" to show a substantial likelihood of success on the merits. *Arnold v. Barbers Hill Indep. Sch. Dist.*, 479 F. Supp. 3d 511, 519 (S.D. Tex. 2020). To show irreparable injury, "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair them." *Id.* at 529 (quoting *Humana Inc. v. Avram A. Jacobson, M.D., P.A.*, 804 F.2d 1390, 1394 (5th Cir. 1986)).

91.    Plaintiffs satisfy each of the requisite elements for injunctive relief. Moreover, injunctive relief is especially appropriate when a former employee misappropriates trade secrets to prevent the use or disclosure of the misappropriated trade secrets. *See Nat'l Oilwell Varco, L.P. v. Garza*, No. CV H-22-2006, 2022 WL 3098238, at *2 (S.D. Tex. Aug. 4, 2022) ("In Texas, the remedy to mitigate harm when a former employee misappropriates trade secrets is to enjoin the use or disclosure of those secrets.") (citing *Southwest Research Institute v. Reraplast Technologies, Ltd.*, 103 S.W.3d 478, 480-81 (Tex. App.–San Antonio 2003)).

92.    Plaintiffs have pleaded for permanent relief, and Plaintiffs will likely prevail against Hill after a trial on the merits with respect to one or more, if not all, of the causes of action pled herein. As detailed herein, Hill knowingly and intentionally accessed the Dynamis computer

and transferred Plaintiffs' Confidential Information and Trade Secrets from the computer to a USB drive for the purpose of taking the information with him to his new employer, Turbine-X (a competitor) in violation of both the DTSA and TUTSA. Hill has breached his fiduciary duties and contractual obligations toward Plaintiffs, and violated the CFAA and HACA. Left unabated, Hill will continue to access and use Plaintiffs' Confidential Information and Trade Secrets, continue breaching his fiduciary duties and contractual obligations, and to reap the benefits of his violations of CFAA and HACA to unjustly enrich himself and/or Turbine-X while disadvantaging and injuring Plaintiffs.

93.    In the meantime, and as a result of the conduct and actions of Hill, as described herein and as verified by the attached verifications, Plaintiffs have suffered, and will continue to suffer, substantial, immediate, and irreparable damage and harm, including harm that is not readily quantifiable and that cannot be fully remedied or repaired through an award of damages, if its Application for a Temporary Restraining Order and Temporary Injunction is denied. Further, Plaintiffs have no other adequate legal remedy.

94.    Because Hill has misappropriated Plaintiffs' Confidential Information and Trade Secrets, Plaintiffs' injury is "presumed" to be irreparable. *See CTCOA, LLC v. NSL Holdings, Inc.*, No. 4:22-CV-03297, 2022 WL 19978294, at *2 (S.D. Tex. Sept. 30, 2022) (holding that "irreparable harm is presumed in cases where trade secrets have been misappropriated") (citing *Glycobiosciences, Inc. v. Woodfield Pharm., LLC*, No. 4:15-CV-02109, 2016 WL 1702674, at *8 (S.D. Tex. Apr. 27, 2016)). Even without this presumption, Hill's actions as described herein, including his ability to access and use Plaintiffs' Confidential Information and Trade Secrets, have disrupted, or will disrupt, and continue to disrupt, Plaintiffs' business and relations with its employees, constituting irreparable harm. *See Nat'l Oilwell Varco, L.P.*, 2022 WL 3098238, at *2

(granting injunction where former employee downloaded 109 files considered confidential information onto a USB drive before joining a competitor); *Frank Surveying Co., Inc. v. Harp*, No. 3:22-CV-2837-B, 2023 WL 172034, at *4 (N.D. Tex. Jan. 11, 2023) (granting temporary restraining order where former employee that "took materials he knew were trade secrets and improperly copied them to a personal USB drive prior his departure despite his obligations under various agreements"); *see also Konnech Inc. v. True the Vote Inc.*, No. 4:22-CV-03096, 2022 WL 19010344, at *4 (S.D. Tex. Oct. 31, 2022) (granting preliminary injunction based on established prima facie case under HACA and CFAA, where defendants "gained unauthorized access to [plaintiff's] computer(s) and obtained personal and confidential information," and interfered with plaintiff's "control over its protected computer data").

95.    Further, if an injunction is not issued, the harm that will occur is irreparable because Plaintiffs' damages are not presently ascertainable or easily calculated, if they can be ascertained or calculated at all.  *See CTCOA, LLC*, 2022 WL 19978294, at *2; *see also Marquis Software Sols., Inc. v. Robb*, 2020 WL 955901, at *10 (N.D. Tex. Feb. 27, 2020) ("[T]he loss of confidential information is a harm that is difficult to verify and to quantify.") (internal quotation omitted). Plaintiffs have no adequate remedy at law for the harm that have been and will continue to be caused by the conduct and actions of Hill, as described herein, because the damages cannot be calculated. *See Glycobiosciences*, 2016 WL 1702674, at *8 (S.D. Tex. Apr. 27, 2016); Tex. Civ. Prac. & Rem. Code § 65.011(5); *Texas Indus. Gas. v. Phoenix Metallurgical Corp.*, 828 S.W.2d 529, 533 (Tex. App.–Houston [1st Dist.] 1992, no writ). Moreover, such immeasurable and irreparable harm will continue unless and until Hill is temporarily restrained and enjoined and permanently enjoined.

96.     Specifically, Plaintiffs request that this Court issue an immediate, temporary restraining order, set a hearing for a temporary injunction, and, after a properly noticed hearing, issue a temporary injunction, and ultimately a permanent injunction, that:

(a) Requires and allows, through procedures detailed in the injunction order, the identification and location of any persons who are in possession, custody, or control of or devices that contain any of Plaintiffs' Confidential Information and Trade Secrets in any form, electronic or paper, in the possession, custody, or control of Defendant Hill, any person who receives notice of the Court's injunctive order(s), or owns, controls, or possesses any electronic device that contains Plaintiff's Confidential Information and Trade Secrets who obtained that information directly or indirectly, including through intermediary persons or devices, from Defendant Hill, followed by the permanent deletion of such Confidential Information and Trade Secrets identified and located in any form and on any device;

(b) further enjoins and prohibits Defendant Hill and any person receiving notice of the Court's injunctive order(s) other than Plaintiffs and their affiliates, from:

(1) using, disclosing, or transferring any information, knowledge, or data of or belonging to Plaintiffs that Defendant Hill received, developed, had access to by virtue of his relationship with Plaintiffs, or copied onto any external USB drive and that constitute Confidential Information and Trade Secrets (as those terms are defined herein) or any other compilations or summaries of such Confidential Information and Trade Secrets wherever located;

(2) using, disclosing, selling, leasing, or otherwise transferring Plaintiffs' Confidential Information and Trade Secrets for the benefit of Defendant Hill, any employer of Hill, or for any other purpose or in any other way that may harm Plaintiffs, diminishes the value of the Confidential Information and Trade Secrets or is inconsistent with Plaintiff's rights therein;

(3) using or otherwise relying upon Plaintiffs' Confidential Information and Trade Secrets to develop or attempt to develop products or a services business competitive with the products or services offered by Plaintiffs or their affiliates;

(4) destroying, concealing, or disposing of any documents, paper or electronic files, or other materials obtained from or belonging to Plaintiffs or containing or referring to the Confidential Information and Trade Secrets or other of Plaintiffs' confidential or proprietary information or information thereof residing, in transit or storage on or in any computers, USB storage devices, internal or external hard drives, networks, or servers utilized by Hill or persons with notice of the court's injunctive order that directly or indirectly received the information from Defendant Hill;

(5) Altering, deleting, removing or writing over in any respect any documents, computer files (including, but not limited to, emails, hard drives, flash drives, disc drives, zip

32

drives), data, electronic information, drafts or other things relating in any way to Plaintiffs; and

(6) Removing any evidence from the jurisdiction of this Court.

97. Plaintiffs further request that Hill be cited to appear and show cause why a temporary injunction should not be issued enjoining Hill during the pendency of this action from the activities and conduct described herein.

98. There is insufficient time to formally serve notice on Hill of the filing of this lawsuit and this Complaint for Injunctive Relief and Damages before holding a hearing on this application for a Temporary Restraining Order. As shown by the foregoing verified complaint, immediate and irreparable injury, loss, or damage will result to Plaintiffs before notice can be served and a hearing can be conducted.

## VII. INTEREST

99. Plaintiffs are entitled to prejudgment and post-judgment interest at the highest rate allowed under the law, for which Plaintiffs seek compensation.

## VIII. CONDITIONS PRECEDENT

100. Plaintiffs complied with all required conditions precedent in bringing their claims. All conditions precedent have occurred, been met, or are excused.

## IX. JURY TRIAL

101. Plaintiffs seek a jury trial as to all claims against Defendant.

## X. REQUEST FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs Evolution Well Service Operating, LLC and Dynamis Power Solutions, LLC pray that Defendant Allen W. Hill be cited to appear and answer herein and that upon the trial of this matter, the Court enter orders and a Final Judgment in favor of Plaintiffs against Allen W. Hill for the following:

33

078652.0000003 DMS 355307175v3

a.  enter a preliminary injunction for the relief requested against Defendant as set forth in this Complaint;

b.  enter judgment against Defendant Hill for all losses and actual, special, consequential, economic, out-of-pocket, and other damages and losses incurred by Plaintiffs, in an amount determined by the trier of fact;

c.  enter judgment against Defendant for exemplary damages as permitted by the DTSA and the TUTSA;

d.  enter judgment against Defendant for exemplary damages in an amount determined by the trier of fact as permitted under Federal and Texas law;

e.  award Plaintiff equitable relief;

f.  upon final trial, enter judgment against Defendant for full permanent injunctive relief as permitted under federal and Texas law;

g.  actual damages;

h.  exemplary damages;

i.  court costs;

j.  reasonable and necessary attorneys' fees pursuant to, but not limited to, Texas Civil Practice & Remedies Code;

k.  award prejudgment and post-judgment interest at the highest rates allowed by law;

l.  all other relief to which Plaintiffs are legally or equitably entitled.

Dated: March 31, 2026

Respectfully submitted,

**HUNTON ANDREWS KURTH LLP**

/s/ *Holly H. Williamson*
**Holly H. Williamson**
Southern District I.D. No. 8591
State Bar No. 21620100
hwilliamson@hunton.com
**Neil D. Kelly**
Southern District I.D. No. 15995
State Bar No. 00784380
neilkelly@hunton.com

34

**Drew McKay**
Southern District I.D. No. 3838351
State Bar No. 24131497
dmckay@hunton.com
600 Travis St., Suite 4200
Houston, Texas 77002
(713) 220-4200 (Telephone)
(713) 220-4285 (Facsimile)

**ATTORNEYS FOR PLAINTIFFS**

35