# EXHIBIT 3

### NON-COMPETE, CONFIDENTIALITY, & NON-SOLICIT AGREEMENT

This Non-Compete, Confidentiality, & Non-Solicit Agreement ("**Agreement**") is entered into by and between: **Evolution Well Services Operating, LLC**, which is located in The Woodlands, Texas, and develops methods to offer high pressure, high rate, hydraulic fracturing and stimulation treatments in oil and gas well environments, including electrically powered hydraulic fracturing, (the "**Employer**"); and HILL, ALLEN , a resident of the State of TX , (the "**Employee**").  The Employer and the Employee are collectively referred to herein as the "**Parties**").

The **Effective Date** of this Agreement is 07/02/2018 , which is the first day of the Employee's employment with the Employer.

In consideration of the Employer's employment of the Employee as and in consideration for the Employer providing to the Employee the Employer's Confidential Information, trade secrets, knowledge of the Employer's unique customer base, innovations, equipment, and products, which the Employee acknowledges to be good and valuable consideration for his obligations hereunder, the Employer  and the Employee hereby agree as follows:

**1. Confidential Information.** The Employee understands and acknowledges that in his position of employment and during the course of his employment by the Employer, he will have access to and learn about the Employer's confidential, proprietary and trade secret information ("**Confidential Information**"), as defined below.

(a) Confidential Information Defined.

For purposes of this Agreement, "Confidential Information" includes, but is not limited to, all information not generally known to the public, in spoken, printed, electronic or any other form or medium, relating directly or indirectly to the Employer's: business processes, technology, inventions, inventions, inventions and technology reflected in patents, unpublished patent applications, patents pending (collectively, "**Patents**") whether such Patents are owned by, assigned to, or applied for by the Employer, practices, methods, policies, plans, publications, documents, research, operations, services, strategies, techniques, agreements, contracts, terms of agreements, transactions, potential transactions, negotiations, pending negotiations, know-how, trade secrets, computer programs, computer software, applications, operating systems, software design, web design, work-in-process, databases, manuals, records, articles, systems, material, sources of material, supplier information, vendor information, financial information, results, accounting information, accounting records, legal information, marketing information, advertising information, pricing information, credit information, design information, payroll information, staffing information, personnel information, employee lists, supplier lists, vendor lists, developments, reports, internal controls, security procedures, graphics, drawings, sketches, market studies, sales information, revenue, costs, formulae, notes, communications, algorithms, product plans, designs, styles, models, ideas, audiovisual programs, inventions, original works of

Page 1 of 11

authorship, discoveries, experimental processes, experimental results, specifications, customer information, customer lists, client information, client lists, manufacturing information, factory lists, distributor lists, and buyer lists of the Employer or its businesses or any existing or prospective customer, supplier, investor or other associated third party, or of any other person or entity that has entrusted information to the Employer in confidence.

The Employee understands that the above list is not exhaustive, and that Confidential Information also includes other information that is marked or otherwise identified as confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary in the context and circumstances in which the information is known or used.

The Employee understands and agrees that Confidential Information includes information developed by him in the course of his employment by the Employer as if the Employer furnished the same Confidential Information to the Employee in the first instance. Confidential Information does not include information that is generally available to and known by the public at the time of disclosure to the Employee, provided that such disclosure is through no direct or indirect fault of the Employee or person(s) acting on the Employee's behalf.

(b) Employer Creation and Use of Confidential Information.

The Employee understands and acknowledges that the Employer has invested, and continues to invest, substantial time, money and specialized knowledge into developing its resources, technology, inventions, and customer base, generating customer and potential customer lists, training its employees, and improving its offerings in the field of electrically powered hydraulic fracturing using electrically-generated technology and stimulation treatments for well sites and well environments. The Employee understands and acknowledges that as a result of these efforts, Employer has created, and continues to use and create Confidential Information. The Employee further understands and acknowledges that this Confidential Information provides Employer with a competitive advantage over others in the marketplace and that Employer would suffer irreparable harm if Confidential Information is disclosed to its competitors.

(c) Confidentiality Agreement and Disclosure and Use Restrictions.

The Employee agrees and covenants: (i) to treat all Confidential Information as strictly confidential; (ii) not to directly or indirectly disclose, publish, communicate or make available Confidential Information, or allow it to be disclosed, published, communicated or made available, in whole or part, to any entity or person whatsoever (including other employees of the Employer) not having a need to know and authority to know and use the Confidential Information in connection with the business of the Employer and, in any event, not to anyone outside of the direct employ of the Employer except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of the Employer's President acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent); and (iii) not to access or use any Confidential Information, and not to copy any documents, records, files, media or other resources containing any Confidential Information, or remove any such

documents, records, files, media or other resources from the premises or control of the Employer, except as required in the performance of the Employee's authorized employment duties to the Employer or with the prior consent of the Employer's President acting on behalf of the Employer in each instance (and then, such disclosure shall be made only within the limits and to the extent of such duties or consent). Nothing herein shall be construed to prevent disclosure of Confidential Information as may be required by applicable law or regulation, or pursuant to the valid order of a court of competent jurisdiction or an authorized government agency, provided that the disclosure does not exceed the extent of disclosure required by such law, regulation or order. The Employee shall promptly provide written notice of any such order to the Employer's President.

The Employee understands and acknowledges that his obligations under this Agreement with regard to any particular Confidential Information shall commence immediately upon the Employee first having access to such Confidential Information (whether before or after he begins employment by the Employer) and will continue during and after his employment by the Employer until such time as such Confidential Information has become public knowledge other than as a result of the Employee's breach of this Agreement or breach by those acting in concert with the Employee or on the Employee's behalf.

**2. Restrictive Covenants.**

(a) Acknowledgment.

The Employee understands that the nature of the Employee's position gives him access to and knowledge of Confidential Information and places him in a position of trust and confidence with the Employer and that the Employee will benefit from the Employer's goodwill. The Employee understands and acknowledges that the Employer invested significant time and expense in developing the Confidential Information and goodwill. The Employee understands and acknowledges that the intellectual, artistic, and scientific services he provides to the Employer are unique, special or extraordinary because the technology and inventions of the Employer for which the Employee will devote his time, attention, and talents is technology and inventions that the Employer hired the Employee to develop, create, and/or market.

The Employee further understands and acknowledges that the restrictive covenants below are necessary to protect the Employer's legitimate business interests in its Confidential Information and goodwill and in the Employee's unique, special or extraordinary services. The Employee further understands and acknowledges that the Employer's ability to reserve these for the exclusive knowledge and use of the Employer is of great competitive importance and commercial value to the Employer and that the Employer will be and would be irreparably harmed if the Employee violates the restrictive covenants below.

(b) Non-competition.

Because of Employer's legitimate business interest as described herein and the good and valuable consideration offered to the Employee, during the term of Employee's employment and for the term of two years, to run consecutively, beginning on the last day of the Employee's

employment with the Employer, for any reason or no reason and whether employment is terminated at the option of the Employee or the Employer, the Employee agrees and covenants not to engage in any Competitive Activity within the industry that provides, develops, invents, or markets: (i) in the field of electrically-powered hydraulic fracturing using electrically-generated technology for well sites and well environments; and/or (ii) mobile electrically-powered systems for use in fracturing underground formations.  The Employee further agrees and covenants that he will not engage in any Competitive Activity that involves, directly or indirectly, designing around, improving, or circumventing the technology or inventions listed on the attached **Schedule A**, or (ii) any updated patent application(s) or new patent application(s) that is or are purchased, acquired, or filed by or on behalf of Employer or Evolution Well Services, LLC, an affiliate of Employer, insofar as those patent applications reflect technology or inventions in the field of electrically-powered hydraulic fracturing using electrically-generated technology for well sites and well environments and/or mobile electrically-powered systems for use in fracturing underground formations.

For purposes of this non-compete clause, "**Competitive Activity**" is activity in which the Employee contributes his knowledge, directly or indirectly, in whole or in part, as an employee, employer, owner, operator, manager, advisor, consultant, agent, partner, director, stockholder, officer, volunteer, intern or any other similar capacity to an entity engaged in the same or similar business as the Employer, including those engaged in the business of providing, developing, inventing, or marketing: (i) in the field of electrically-powered hydraulic fracturing using electrically-generated technology for well sites and well environments; and/or (ii) mobile electrically-powered systems for use in fracturing underground formations. The Employer's primary, but not exclusive, competitors are:  U.S. Well Services, LLC, General Electric Company/GE, Halliburton, and Schlumberger.  Prohibited Activity also includes activity that may require or inevitably require disclosure of trade secrets, proprietary information or other Confidential Information.

Nothing herein will prohibit the Employee from purchasing or owning less than five percent (5%) of the publicly traded securities of any corporation, provided that such ownership represents a passive investment and that the Employee is not a controlling person of, or a member of a group that controls, such corporation.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to the Company's President

(c) Non-solicitation of Employees.

Employee understands and acknowledges that the Employer has expended and continues to expend significant time and expense in recruiting and training its employees and that the loss of employees would cause significant and irreparable harm to the Employer. The Employee agrees and covenants not to directly or indirectly solicit, hire, recruit, attempt to hire or recruit, or

induce the termination of employment of any employee of the Employer during the term of two years, to run consecutively, beginning on the last day of the Employee's employment with the Employer.

        (d) <u>Non-solicitation of Customers.</u>

The Employee understands and acknowledges that the Employer has expended and continues to expend significant time and expense in developing customer relationships, customer information and goodwill, and that because of the Employee's experience with and relationship to the Employer, he will have access to and learn about much or all of the Employer's customer information. "**Customer Information**" includes, but is not limited to, names, phone numbers, addresses, e-mail addresses, order history, order preferences, chain of command, pricing information and other information identifying facts and circumstances specific to the customer and relevant to sales, marketing, and services.  The Employee understands and acknowledges that loss of this customer relationship and/or goodwill will cause significant and irreparable harm to the Employer.

The Employee agrees and covenants, during the term of two years, to run consecutively, beginning on the last day of the Employee's employment with the Employer, not to directly or indirectly solicit, contact (including but not limited to e-mail, regular mail, express mail, telephone, fax, and instant message), attempt to contact or meet with the Employer's current, former, or prospective customers for purposes of offering or accepting goods or services similar to or competitive with those offered by the Employer.

This restriction shall only apply to each of the following:

(i) Customers or prospective customers the Employee contacted in any way during the twenty-four (24) months before the last day of the Employee's employment with the Employer.

(ii) Customers about whom the Employee has trade secret or Confidential Information.

(iii) Customers who became customers during the Employee's employment with the Employer.

(iv) Customers about whom the Employee has information that is not available publicly.

## 3. **Non-disparagement.**

The Employee agrees and covenants that he will not at any time make, publish or communicate to any person or entity or in any public forum any defamatory or disparaging remarks, comments or statements concerning the Employer or its businesses, or any of its employees and officers, and existing and prospective customers, suppliers, investors and other associated third parties.

This Section does not, in any way, restrict or impede the Employee from exercising protected rights to the extent that such rights cannot be waived by agreement or from complying with any applicable law or regulation or a valid order of a court of competent jurisdiction or an authorized government agency, provided that such compliance does not exceed that required by the law, regulation or order. The Employee shall promptly provide written notice of any such order to the Employer's President.

**4. <u>Agreement Regarding Photographing, Videotaping, Depicting, or Publishing of Technology.</u>**

The Employee acknowledges and agrees that unless authorized in writing by the President of the Company or required or permitted by law, he will not photograph or in any manner record, videotape, or depict Employer's technology, equipment, designs, drawings, and/or any confidential or proprietary information, including Employer's technology in the field of electrically-powered hydraulic fracturing using electrically-generated technology for well sites and well environments; and/or mobile electrically-powered systems for use in fracturing underground formations. The Employee understands and agrees that unless authorized in writing by the President of the Company he will not, furthermore, post, copy, download, or describe on any electronic device or social media (such social media to include but is not limited to LinkedIn, Facebook, Instagram, Twitter) any photograph, videotape, picture, depiction, description, or drawing of Employer's technology or equipment, including but not limited to Employer's technology in the field of electrically-powered hydraulic fracturing using electrically-generated technology for well sites and well environments; and/or mobile electrically-powered systems for use in fracturing underground formations. The Employee agrees and understands that such prohibitions include his posing for a photograph or video when such photograph or video includes any portion of Employer's technology and equipment.

Nothing herein, however, prevents the Employee from communicating about or transmitting pictures or photographs of Employer's technology and equipment to the extent necessary for the performance of the Employee's the duties of his employment with Employer as is needed and necessary and using Employer's electronic equipment, including the Employer's server.

**5. <u>Acknowledgment.</u>**

The Employee acknowledges and agrees that the services to be rendered by him to the Employer are of a special and unique character; that the Employee will obtain knowledge and skill relevant to the Employer's industry, methods of doing business and marketing strategies by virtue of the Employee's employment; and that the restrictive covenants and other terms and conditions of this Agreement are reasonable and reasonably necessary to protect the legitimate business interest of the Employer.

The Employee further understands and acknowledges that the amount of his compensation reflects, in part, his obligations and the Employer's rights under this Agreement; that he has no expectation of any additional compensation, royalties or other payment of any kind not otherwise referenced herein in connection herewith; that he will not be subject to undue hardship by reason of his full compliance with the terms and conditions of this Agreement or the

Employer's enforcement thereof; and that this Agreement is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time.

Nothing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the "at-will" status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice.

## 6. <u>Remedies.</u>

In the event of a breach or threatened breach by the Employee of any of the provisions of this Agreement, the Employee hereby agrees and acknowledges that the Employer will suffer immediate and irreparable injury, for which monetary damages will not be an adequate remedy. The Employee further acknowledges and agrees that the Employer will be entitled to immediate injunctive relief, including a temporary restraining order, a temporary injunction and a permanent injunction or other equitable relief against such breach or threatened breach from any court of competent jurisdiction, without the necessity of showing any actual damages or that money damages would not afford an adequate remedy, and without the necessity of posting any bond or other security. The Employee further agrees and acknowledges that the aforementioned equitable relief shall be in addition to, not in lieu of, and without prejudice to any legal remedies, monetary damages or other available forms of relief the Employer may seek.

## 7. <u>Successors and Assigns.</u>

(a) <u>Assignment by the Employer.</u>

To the extent permitted by state law, the Employer may freely assign this Agreement at any time. This Agreement shall inure to the benefit of the Employer and its successors and assigns.

(b) <u>No Assignment by the Employee</u>.

The Employee may not assign this Agreement or any part hereof. Any purported assignment by the Employee shall be null and void from the initial date of purported assignment.

## 8. <u>Warranty.</u>

Employee represents and warrants that he is not a party to any non-compete restrictive covenant or related contractual limitation that would interfere with or hinder his ability to undertake the obligations and expectations of employment with the Employer.

## 9. <u>Governing Law: Jurisdiction and Venue.</u>

This Agreement, for all purposes, will be construed in accordance with the laws of Texas without regard to conflicts-of-law principles. Any action or proceeding by either of the Parties to

enforce this Agreement will be brought only in a state or federal court located in the State of Texas, County of Harris or the United States District Court for the Southern District of Texas, Houston Division. The Parties hereby irrevocably submit to the exclusive jurisdiction of such courts and waive the defense of inconvenient forum to the maintenance of any such action or proceeding in such venue.

**10. 18 U.S.C. §1833 Notice.**

An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade sAn individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court orderecret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.

**11. Entire Agreement.**

Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the agreement of the Employee regarding non-competition, non-solicitation, and non-disparagement, and supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to non-competition, non-solicitation, and non-disparagement. In the event of any inconsistency between the statements in the body of this Agreement and any other agreements with or by the Employee, the statements in the body of this Agreement shall control.

**12. Modification and Waiver.**

No provision of this Agreement may be amended or modified unless such amendment or modification is agreed to in writing and signed by the Employee and by the Employer's

President. No waiver by either of the Parties of any breach by the other party hereto of any condition or provision of this Agreement to be performed by the other party hereto will be deemed a waiver of any similar or dissimilar provision or condition at the same or any prior or subsequent time, nor will the failure of or delay by either of the Parties in exercising any right, power or privilege hereunder operate as a waiver thereof to preclude any other or further exercise thereof or the exercise of any other such right, power or privilege.

### 13. <u>Severability.</u>

Should any provision of this Agreement be held by a court of competent jurisdiction to be enforceable only if modified, or if any portion of this Agreement shall be held as unenforceable and thus stricken, such holding shall not affect the validity of the remainder of this Agreement, the balance of which will continue to be binding upon the Parties with any such modification to become a part hereof and treated as though originally set forth in this Agreement.

The Parties further agree that any such court is expressly authorized to modify any such unenforceable provision of this Agreement in lieu of severing such unenforceable provision from this Agreement in its entirety, whether by rewriting the offending provision, deleting any or all of the offending provision, adding additional language to this Agreement or by making such other modifications as it deems warranted to carry out the intent and agreement of the Parties as embodied herein to the maximum extent permitted by law.

The Parties expressly agree that this Agreement as so modified by the court shall be binding upon and enforceable against each of them. In any event, should one or more of the provisions of this Agreement be held to be invalid, illegal or unenforceable in any respect, such invalidity, illegality or unenforceability shall not affect any other provisions hereof, and if such provision or provisions are not modified as provided above, this Agreement shall be construed as if such invalid, illegal or unenforceable provisions had not been set forth herein.

### 14. <u>Captions.</u>

Captions and headings of the sections and paragraphs of this Agreement are intended solely for convenience and no provision of this Agreement is to be construed by reference to the caption or heading of any section or paragraph.

### 15. <u>Counterparts.</u>

This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which taken together shall constitute one and the same instrument.

### 16. <u>Tolling.</u>

Should the Employee violate any of the terms of the restrictive covenant obligations articulated herein, the obligation at issue will run from the first date on which the Employee ceases to be in violation of such obligation.

**17. <u>Attorneys' Fees.</u>**

Should the Employee breach any of the terms of the restrictive covenant obligations articulated herein, to the extent authorized by Texas law, the Employee will be responsible for payment of all reasonable attorneys' fees and costs that Employer incurs in the course of enforcing the terms of the Agreement, including demonstrating the existence of a breach and any other contract enforcement efforts.

**18. <u>No Preparation for Competition.</u>**

During the term of the Employee's employment, Employee agrees not to undertake preparations for competitive activity prohibited by this Agreement.

**19. <u>Acknowledgements Concerning Prior Employment.</u>**

The Employee agrees, confirms, and acknowledges:

(a) he is able to carry out the duties and obligations of his position with Employer without breaching any restrictions, contractual or otherwise, imposed on him by his former employers ("**<u>Former Employers</u>**");

(b) he will inform the Employer if any such restrictions exist and he will provide as much information as possible about any such restrictions to the Employer, including agreements between him and his Former Employers, if any, that describe such restrictions on his activities;

(c) he will not and has not removed or taken any confidential documents or proprietary data or materials of any kind, electronic or otherwise, from his Former Employers without written authorization from his Former Employers, and he will not use or disclose any confidential information in the performance of his duties and assignments with the Employer that he obtained or learned during the course and scope of his employment with his Former Employers; and

(d) that in the event he has any questions about whether his Former Employers own particular documents or other information of a confidential and propriety nature, he will discuss such questions with his Former Employers and obtain written permission from his Former Employers to use such information and documents that his Former Employers claim it or they own or owns before using any of the documents or information in the performance of his employment with the Employer.

**20. <u>Notice.</u>**

If and when Employer's employment with Employer terminates, whether voluntarily or involuntarily, Employee agrees to provide to any subsequent employer a copy of this Agreement. In addition, Employee authorizes Employer to provide a copy of this Agreement to third parties, including but not limited to, Employee's subsequent, anticipated or possible future employer.

IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date stated, above, in The Woodlands, Texas.

**EVOLUTION WELL SERVICES OPERATING, LLC**
**d/b/a EVOLUTION WELL SERVICES**

By_____
**Jeffrey G. Morris**
**President, Evolution Well Service Operating, LLC**

**EMPLOYEE**

ee_A0605b38464039f4a_456172

**Employee (Printed Name)** HILL, ALLEN _____

**Witness** cl_JGober5a79d49b36799_456172 _Jessica Gober_ _____

**Witness (printed name)** jessica gober _____

## <u>SCHEDULE A</u>

List of Patents and Patent Applications

1. U.S. Patent Application No. 13/441,334

2. U.S. Patent No. 9,121,257 B2

3. U.S. Patent No. 9,103,193 B2

4. U.S. Patent No. 9,140,110

78652.000001 EMF_US 52914256v3